IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

JESUS RENE QUINTERO,　　　　　§
　　　　　　　　　　　　　　　§
　　　　　　*Petitioner*,　　　　§
　　　　　　　　　　　　　　　§
v.　　　　　　　　　　　　　　§　　　CIVIL ACTION No. H-13-2729
　　　　　　　　　　　　　　　§
WILLIAM STEPHENS,　　　　　　§
　　　　　　　　　　　　　　　§
　　　　　　*Respondent*.　　　　§

## MEMORANDUM OPINION AND ORDER

State inmate Jesus Rene Quintero, represented by counsel, filed a section 2254 habeas petition challenging his convictions for murder and attempted murder. Respondent filed a motion for summary judgment (Docket Entry No. 11), to which petitioner filed a response (Docket Entry No. 15).

Based on consideration of the motion, the response, the record, and the applicable law, the Court **GRANTS** respondent's motion for summary judgment and **DISMISSES** this case for the reasons that follow.

## I. PROCEDURAL BACKGROUND

Petitioner was convicted of murder and attempted murder and sentenced to thirty years and five years incarceration, respectively. The convictions were affirmed on appeal, *Quintero v. State*, No. 09-07-00427-CR, 2010 WL 878995 (Tex. App.—Beaumont Mar. 10, 2010, pet. ref'd), and the Texas Court of Criminal Appeals refused discretionary review.

Petitioner's application for state habeas relief, filed with the trial court in 2011, was denied by the Texas Court of Criminal Appeals in August 2013.

Petitioner raises the following claims for federal habeas relief in the instant petition:

1. Trial counsel was ineffective in allowing petitioner to testify, and in failing to prepare him to testify, in narrative form, because it resulted in petitioner's inability to support jury charges for self-defense, manslaughter, and sudden passion. It also opened the door to inadmissible evidence regarding petitioner's extraneous crimes and bad acts.

2. The trial court violated petitioner's right to effective assistance of counsel by forcing him to testify in narrative form.

Respondent argues that petitioner's second claim is procedurally defaulted, and that all of the claims are without merit.

## II. FACTUAL BACKGROUND

The intermediate state appellate court set forth the following statement of facts in its opinion affirming petitioner's convictions:

> A group of five friends, including complainants Alejandro Juarez and Mandrique Mejia, were playing soccer outside the home of Jhovany Juarez. [Quintero] drove by in a green Cadillac and opened fire, striking Alejandro Juarez in the back and striking Mandrique Mejia in the head. Subsequently, Alejandro Juarez died from the gunshot wound to his back.

*Quintero*, 2010 WL 878995, at *1.

### III.  THE APPLICABLE LEGAL STANDARDS

A.    <u>Habeas Review</u>

This petition is governed by the applicable provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). 28 U.S.C. § 2254. Under the AEDPA, federal habeas relief cannot be granted on legal issues adjudicated on the merits in state court unless the state adjudication was contrary to clearly established federal law as determined by the Supreme Court, or involved an unreasonable application of clearly established federal law as determined by the Supreme Court. *Harrington v. Richter*, 562 U.S. ___, 131 S. Ct. 770, 785 (2011); *Williams v. Taylor*, 529 U.S. 362, 404–05 (2000); 28 U.S.C. §§ 2254(d)(1), (2). A state court decision is contrary to federal precedent if it applies a rule that contradicts the governing law set forth by the Supreme Court, or if it confronts a set of facts that are materially indistinguishable from such a decision and arrives at a result different from the Supreme Court's precedent. *Early v. Packer*, 537 U.S. 3, 7–8 (2002).

A state court unreasonably applies Supreme Court precedent if it unreasonably applies the correct legal rule to the facts of a particular case, or unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply, or unreasonably refuses to extend that principle to a new context where it should apply. *Williams*, 529 U.S. at 409. In deciding whether a state court's application was unreasonable, this Court considers whether the application was objectively unreasonable. *Id.* at 411. "It bears repeating that even a strong case for relief does not mean the state court's contrary

3

conclusion was unreasonable." *Richter*, 131 S. Ct. at 786. As stated by the Supreme Court in *Richter*,

> If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal.

*Id.* (emphasis added; internal citations omitted).

The AEDPA affords deference to a state court's resolution of factual issues. Under 28 U.S.C. § 2254(d)(2), a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless it is objectively unreasonable in light of the evidence presented in the state court proceeding. *Miller–El v. Cockrell*, 537 U.S. 322, 343 (2003). A federal habeas court must presume the underlying factual determination of the state court to be correct, unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Miller–El*, 537 U.S. at 330–31.

B.    <u>Summary Judgment</u>

In deciding a motion for summary judgment, the district court must determine whether the pleadings, discovery materials, and the summary judgment evidence show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as

a matter of law. FED. R. CIV. P. 56(c). Once the movant presents a properly supported motion for summary judgment, the burden shifts to the nonmovant to show with significant probative evidence the existence of a genuine issue of material fact. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000).

While summary judgment rules apply with equal force in a section 2254 proceeding, the rules only apply to the extent that they do not conflict with the federal rules governing habeas proceedings. Therefore, section 2254(e)(1), which mandates that a state court's findings are to be presumed correct, overrides the summary judgment rule that all disputed facts must be construed in the light most favorable to the nonmovant. Accordingly, unless a petitioner can rebut the presumption of correctness of a state court's factual findings by clear and convincing evidence, the state court's findings must be accepted as correct by the federal habeas court. *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002), *overruled on other grounds by Tennard v. Dretke*, 542 U.S. 274 (2004).

## IV.  INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel. U.S. CONST. amend. VI. A federal habeas corpus petitioner's claim that he was denied effective assistance of counsel is measured by the standards set out in *Strickland v. Washington*, 466 U.S. 668 (1984). To assert a successful ineffectiveness claim, a petitioner must establish both constitutionally deficient performance by counsel and actual prejudice as a result of counsel's deficient

performance. *Id.* at 687.  The failure to demonstrate either deficient performance or actual prejudice is fatal to an ineffective assistance claim. *Green v. Johnson,* 160 F.3d 1029, 1035 (5th Cir. 1998).

A counsel's performance is deficient if it falls below an objective standard of reasonableness. *Strickland,* 466 U.S. at 688.  In determining whether counsel's performance was deficient, judicial scrutiny must be highly deferential, with a strong presumption in favor of finding that trial counsel rendered adequate assistance and that the challenged conduct was the product of a reasoned trial strategy. *West v. Johnson,* 92 F.3d 1385, 1400 (5th Cir. 1996). To overcome this presumption, a petitioner must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. *Wilkerson v. Collins,* 950 F.2d 1054, 1065 (5th Cir. 1992).  However, a mere error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. *Strickland,* 466 U.S. at 691.

Actual prejudice from a deficiency is shown if there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different. *Id.* at 694.  To determine prejudice, the question focuses on whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair. *Lockhart v. Fretwell,* 506 U.S. 364, 372 (1993).  In that regard, unreliability or unfairness does not result if the ineffectiveness does not deprive the petitioner of any substantive or procedural right to which he is entitled. *Id.*

6

Petitioner claims that trial counsel was ineffective in the following instances.

A.    Narrative Form Testimony

Petitioner claims that trial counsel was ineffective in allowing him to testify, and in failing to prepare him to testify, in narrative form, because it resulted in petitioner's inability to support jury charges for self-defense, manslaughter, and sudden passion. Petitioner further claims that his testifying in narrative form, and counsel's failure to prepare him, resulted in his opening the door to otherwise inadmissible evidence of extraneous crimes and bad acts.

In his affidavit submitted to the state trial court on collateral review, trial counsel responded to petitioner's arguments as follows:

> Preparing a defendant to testify in a trial is an ongoing process that begins with the first interview of the defendant and ends when the State has rested its case. During the first interview, potential defenses, witnesses, and sources of evidence are identified and discussed with the defendant. Counsel then begins an investigation of the representations of the defendant with a view to establishing them with other independent evidence.

> Following the evidentiary disclosures by the State, the defendant is informed of the evidence and inconsistencies are discussed. Further investigation takes place to resolve inconsistencies, locate evidence and witnesses supporting potential defenses, and establish other facts relevant to the case. Counsel then provides a defendant with opinions regarding the facts supported by the evidence and conducts further investigation and discussion with the defendant.

> Before making a final decision as to whether he will testify or not, a defendant has had the benefit of observing the State's entire case including witnesses and other evidence. In most cases, a defendant's decision to testify is made prior to trial but not in every case.

> This process was followed in preparing the Applicant for potential testimony. Applicant was kept abreast of all facts in this case as they developed. Counsel

advised Applicant of his absolute right to testify in his trial. Counsel advised, discouraged and recommended that Applicant not testify.

Counsel explained to Applicant the weaknesses and problems associated with his theories of self-defense, sudden passion and manslaughter. Applicant was advised that by testifying he would be subject to cross-examination regarding his prior statements, admissions and relevant prior criminal conduct. Applicant was personally familiar with his prior criminal acts. Applicant was represented by me in court regarding many of his prior acts of misconduct. Applicant was also confronted with his prior criminal misconduct during a bond reduction hearing earlier in this cause.

Applicant made his decision to testify at the conclusion of the State's case. Upon being informed by Applicant that he intended to testify, Counsel stated to him that he must tell the truth or the jury would not only convict but punish him harshly if it felt he was not telling the truth.

\* \* \* \*

At the beginning of my representation in this case, Applicant admitted that he shot and killed Alejandro Juarez (Alejandro) and wounded Mandrique Mejia (Mandrique) neither of which he knew by name. Applicant stated that he fired two shots at each of them from 20 to 30 feet away with a .38. When asked why he did this, Applicant stated that he felt trapped and threatened because they had tried to kill him and his mother.

When quizzed about the shooting of him and his mother, Applicant stated that about a year prior to the current incident, he and his mother were unloading groceries late in the evening when a dark colored pickup truck stopped in front of their home and one or more shotgun blasts were fired by someone in the truck wounding both Applicant and his mother. Applicant could not provide details as to the color, make, model or license plate number of the truck. Applicant could not identify anyone in the truck nor state the number of persons in the truck. Although the incident was reported to the police, no legal action was ever initiated.

Applicant stated that the truck was similar to the one driven by a man who was dating the same girl he was dating and that he concluded the shooting of him and his mother resulted from the jealousy of the person dating his girl friend. Applicant stated that his girl friend was Nayela and she lived in New Waverly,

8

Texas. Believing that Nayela could provide useful information, messages were sent through family and friends that I wanted to speak with her. Nayela eventually called me and we agreed to meet in the Subway in New Waverly, Texas at 4:00 p.m. on July 16, 2007.

Nayela's real name is Maria Llaneli Leon (Maria). Maria stated that she was hiding and wanted nothing to do with the case. She would not provide me with an address or other contact information. Maria stated that she had been dating both Applicant and Jhovany Juarez (Jhovany), the brother of Alejandro Juarez (the deceased). Maria described Jhovany as being very jealous and violent. She saw Jhovany the night that Applicant and his mother were shot. Jhovany told her that he had been to Applicant's house but did not admit that he had shot Applicant and his mother. She stated further that there was another man with Jhovany that evening and it was not Alejandro.

Maria's information was made known to the Applicant. Applicant was advised that the evidence indicate[d] that neither Alejandro nor Mandrique had been involved in the shooting of Applicant and his mother and that the evidence further indicated that the shooter was most likely Jhovany and/or other unknown person(s). As the investigation and preparation proceeded, Applicant began changing his story.

First, Applicant began denying to counsel that he had shot Alejandro or Mandrique. Applicant stated that the shots were fired by the passenger in his vehicle whose name was Beto. Applicant could not provide the full name or location of his passenger Beto. Later, Applicant advised counsel that Beto had gone back to Mexico. There was no independent evidence indicating that Applicant's passenger had shot Alejandro and Mandrique.

Second, Applicant changed his story again stating that the shots were fired by one of the individuals in the group located at the scene of the shootings of Alejandro and Mandrique. There was no independent evidence indicating that a member of the group was armed or had shot Alejandro and Mandrique.

Third, Applicant offered a theory that he was intoxicated at the time of the shootings and he became afraid that the fleeing members of the group at the scene of the shootings were going to get weapons and that he needed to defend himself.

9

Based upon prior investigation and discussions with the Applicant, I believed that Applicant was going to be untruthful in his testimony and I refused to suborn any perjury that might occur. In counsel's opinion, it was better to let him testify in the narrative and tell his story in his own words without interruption whether truthful or not.

Applicant was advised concerning all of these issues [of self-defense, sudden passion, and opening the door to the Applicant's extraneous crimes and bad acts]. Self defense: Applicant was advised that he had no self-defense issue because none of the victims were armed; he did not retreat before using deadly force; and he intentionally fired two (2) shots at each victim as they fled. Sudden passion: Counsel advised Applicant that he had no immediate influence of sudden passion, no adequate cause because of the significant length of time that had passed between the shooting of him and his mother; that the victims made no provocative movement towards him, other than running away; that there was no evidence that the victims were involved in the shooting of Applicant and his mother; and that neither of the victims was dating his girl friend. Extraneous Crimes and Bad Acts: Applicant was advised that his past legal problems, if admissible and relevant, could be used against him during cross-examination by the prosecutor. Applicant had faced this problem earlier in the trial at his bond reduction hearing.

\* \* \* \*

A manslaughter instruction was not requested because there was no evidence to support giving the instruction. Applicant's actions in firing 2 shots at each victim as they fled were intentional and not reckless and Applicant admitted in his testimony that he was responsible for the shooting of the victims.

*Ex parte Quintero*, pp. 93–96.

In rejecting petitioner's ineffective assistance of counsel claims on collateral review, the state trial court made the following relevant findings of fact:

1.     The Court finds that the facts asserted in the affidavit of [trial counsel] are true and that the affidavit of [trial counsel] is credible.

2.      The Court finds, based on the clerk's record and the credible affidavit of [trial counsel], that [trial counsel] represented the applicant in the primary case.

3.      The Court finds based on the court reporter's record that the applicant testified during the guilt stage of his trial against the advice of [trial counsel and co-counsel].

4.      The Court finds based on the court reporter's record that the applicant was allowed to testify in the narrative at the request of [trial counsel].

5.      The Court finds based on the credible affidavit of [trial counsel] that [trial counsel] advised and prepared the applicant to testify. The Court finds that [trial counsel] discussed and identified potential defenses, witnesses, and sources of evidence beginning with the first interview of the applicant.  Before the applicant made a final decision to testify he had the benefit of observing the State's entire case including witnesses and other evidence that was presented at trial and that was gathered as part of the defense investigation.

6.      The Court finds based on the credible affidavit of [trial counsel] that [trial counsel] explained to the applicant the weaknesses and problems associated with the applicant's theories of self-defense, sudden passion, and manslaughter.  Furthermore, [trial counsel] advised the applicant that by testifying he would subject himself to cross-examination regarding prior statements, admissions, and relevant prior criminal conduct that [trial counsel] was familiar with because of [trial counsel's] prior representation of the applicant in those matters.

7.      The Court finds based on [trial counsel's] credible affidavit that [trial counsel] allowed the applicant to testify in the narrative because of the applicant's prior statements to [him] concerning how the offense occurred.

8.      The Court finds based on the credible affidavit of [trial counsel] that at the beginning of [trial counsel's] representation of the applicant, the applicant admitted that he shot and killed the decedent, Alejandro Juarez, and wounded Mandrique Mejia ('Mejia'), neither of which he knew by name.

9.      The Court finds based on the credible affidavit of [trial counsel] that the applicant informed [him] that he fired two shots at Alejandro Juarez and Mejia from twenty to thirty feet away with a .38 handgun.

10.     The Court finds based on the credible affidavit of [trial counsel] that the applicant advised [him] that he shot at Alejandro Juarez and Mejia because he felt trapped and threatened because they had tried to kill him and his mother.

11.     The Court finds based on the credible affidavit of [trial counsel] that the applicant advised that a year prior to the primary offense a dark colored pickup truck stopped in front of his home as he and his mother were unloading groceries and one or more shotgun blasts were fired in his direction. However, the applicant could not provide details as to the color, make, model, or license plate number of the truck. The applicant also could not identify anyone in the truck nor state the number of persons in the truck.

12.     The Court finds based on the credible affidavit of [trial counsel] that [he] met with Maria Llaneli Leon ('Leon'), a former girlfriend of the applicant, on July 16, 2007 after the applicant advised [him] that the shooting that was directed towards him and his mother may have occurred because the applicant was dating Leon who was also seeing another man at the same time.

13.     The Court finds based on the credible affidavit of [trial counsel] that the other man that Leon was seeing was Jhovany Juarez. Jhovany Juarez is the brother of the decedent, Alejandro Juarez.

14.     The Court finds based on the credible affidavit of [trial counsel] that [trial counsel] informed the applicant of his conversation with Leon and that the evidence indicated that Alejandro Juarez and Mejia were not involved in the shooting directed towards the applicant and his mother.

15.     The Court finds based on the credible affidavit of [trial counsel] that after being informed of his conversation with Leon and as the investigation and preparation proceeded the applicant began changing his story.

16.     The Court finds based on the credible affidavit of [trial counsel] that the applicant began denying to counsel that he had shot Alejandro Juarez and Mejia.  The applicant stated that the shots were fired by the passenger in his vehicle whose name was Beto.  However, the applicant could not provide the full name or location of Beto.

17.     The Court finds based on the credible affidavit of [trial counsel] that there was no independent evidence indicating that applicant's passenger, Beto, had shot Alejandro Juarez and Mejia.

18.     The Court finds based on the court reporter's record that the applicant did not mention a Beto was with him at the time of the offense. Instead, the applicant stated that a 'Dude named Juan' was with him.

19.     The Court finds based on the credible affidavit of [trial counsel] that the applicant next changed his story to the shots were fired by one of the individuals in the group located at the scene of the primary offense. However, there was no independent evidence indicating that a member of the group was armed or had shot Alejandro Juarez or Mejia.

20.     The Court finds based on the court reporter's record that the applicant testified that he was responsible for the shooting and did not indicate that another person or group of persons was responsible.

21.     The Court finds that the applicant is not credible.

22.     The Court finds based on the credible affidavit of [trial counsel] that the applicant next offered a theory that he was intoxicated at the time of the shooting and that he became afraid that the fleeing members of the group at the scene of the offense were going to get weapons and that he needed to defend himself.

23.     The Court finds based on the credible affidavit of [trial counsel] that based upon [trial counsel's] prior investigation and discussions with the applicant that [he] believed that the applicant was going to be untruthful in his testimony and [trial counsel] refused to suborn any perjury that might occur. [Trial counsel] believed that it was better to let the applicant testify in the narrative and tell his story in his own words without interruption whether truthful or not.

13

24.     The Court finds based on the credible affidavit of [trial counsel] that [he] advised the applicant of the potential defenses of self-defense, sudden passion, and opening the door to applicant's prior extraneous crime and bad acts.

25.     The Court finds based on the credible affidavit of [trial counsel] that [he] advised the applicant that self-defense was not a feasible issue because neither the decedent nor Mejia were armed, and the applicant did not retreat before using deadly force, and the applicant intentionally fired two shots at each victim as they fled.

26.     The Court finds based on the credible affidavit of [trial counsel] that [counsel] advised the applicant that he had no immediate influence of sudden passion, no adequate cause because of the significant length of time that had passed [after] the shooting of the applicant and his mother. The applicant was further advised that the victims made no provocative movement towards him other than running away, and that there was no evidence that the victims were involved in the prior shooting of the applicant and his mother. Furthermore, neither one of the victims had dated his girlfriend, Leon.

27.     The Court finds based on the credible affidavit of [trial counsel] that [trial counsel] advised the applicant that his past legal problems, if admissible and relevant, could be used against him during cross-examination by the prosecutor. The applicant was aware of this issue because it had been used against him during a bond reduction hearing.

28.     The Court finds based on the court reporter's record that the applicant was involved in, at a minimum, what would be characterized as discharging a firearm, at the same trailer park where the primary offense occurred, when he was involved in a dispute with a person who disrespected him.

29.     The Court finds based on the court reporter's record that the applicant admitted to extraneous offenses of burglary of a habitation, driving while intoxicated, assault, and animal cruelty as he testified in the narrative.

30.     The Court finds based on the credible affidavit of [trial counsel] and the court reporter's record that [counsel] did not request a jury instruction on manslaughter because there was no evidence to support an instruction. Applicant's actions in firing two shots at each victim as they fled were intentional, not reckless, and the applicant admitted in his testimony that he was responsible for the shooting of the victims.

31.     The Court finds based on the court reporter's record that the applicant admitted to possessing a firearm, driving to the location where the victims were at, and shooting at them. Furthermore, the applicant admitted that he knew there was a possibility that somebody could die from his actions.

32.     The Court finds based on the court reporter's record and the credible affidavit of [counsel] that an instruction on sudden passion was not appropriate or necessary.

33.     The Court finds based on the court reporter's record and the credible affidavit of [trial counsel] that an instruction on manslaughter was not appropriate or necessary.

34.     The Court finds based on the clerk's record that the applicant appealed his conviction and the Ninth Circuit Court of Appeals affirmed his conviction in an unpublished memorandum opinion on March 10, 2010.

35.     The Court finds that the applicant challenged the trial court's failure to submit an instruction on sudden passion with the jury charge. The Court further finds that the Ninth Circuit held that there were 'several reasons why Quintero was not entitled to an instruction on sudden passion.' The trial court finds the Ninth Court of Appeals' reasoning to be persuasive.

*Ex parte Quintero*, pp. 102–108 (citations, record references omitted). The trial court also

made the following relevant conclusions of law:

1.      The applicant fails to show that [trial counsel's] conduct fell below an objective standard of reasonableness and that, but for trial counsel's alleged deficient conduct, there is a reasonable probability that the result of the proceeding would have been different.

15

2.    The totality of the representation afforded the applicant by [trial counsel] was sufficient to protect his right to reasonably effective assistance of counsel in the primary case.

3.    The applicant fails to show that he was denied due process by the trial court not *sua sponte* instructing the jury on the lesser-included offense of manslaughter during the guilt stage of his trial. The failure to request an instruction on a lesser-included offense may be a reasonable trial strategy. Thus, it is not appropriate for a trial court to instruct on a lesser-included offense and potentially conflict with defense counsel's trial strategy.

4.    The Court finds that the applicant has failed to show that he was acting under sudden passion was [*sic*] directly cause [*sic*] by and arouse [*sic*] out of provocation of the deceased at the time of the offense when he murdered Alejandro Juarez and shot Mejia.

5.    Furthermore, the prior shooting of the applicant and his mother is expressly excluded from the definition of sudden passion [under the state penal code]. The Penal Code states that sudden passion means

> 'Passion directly caused by and arising out of provocation by the individual killed or another acting with the person killed which passion arises at the time of the offense and is not solely the result of former provocation.'

The applicant was not entitled to a sudden passion [*sic*] because it would have been solely as a result of former provocation. However, and more importantly, the court reporter's record thoroughly demonstrates that the decedent had not previously provoked the applicant. Generally 'evidence of provocation by the decedent is required for a sudden-passion charge.'

*Id.*, pp. 110–111 (citations omitted). The Texas Court of Criminal Appeals relied on the trial court's findings of fact and conclusions of law in denying habeas relief. *Id.*, at cover.

16

Petitioner argues that trial counsel never specifically prepared him to testify in narrative form after he formally announced his decision to testify. However, trial counsel testified that his preparation of petitioner had been an on-going process throughout his representation of petitioner, culminating in his admonishing petitioner "to tell the truth" before he took the stand. Petitioner's conclusory assertions that he was unprepared to testify in narrative form are not borne out by probative summary judgment evidence or the record, and are insufficient to set aside the state court's determination.

However, even assuming counsel were deficient in not sufficiently preparing petitioner to testify in narrative form, petitioner fails to establish actual prejudice. In particular, petitioner fails to show that petitioner testified to otherwise inadmissible prior criminal offenses or bad acts and that, but for counsel's failure to prepare petitioner to testify in the narrative, these matters would not have been introduced into evidence. Petitioner does not establish that testimony regarding two extraneous shootings and an extraneous robbery, elicited by the State during cross-examination, were otherwise inadmissible.

Moreover, petitioner fails to demonstrate that there were credible, truthful facts he could have presented at trial to support jury instructions on self-defense, manslaughter, or sudden passion. For instance, petitioner argues that, after petitioner fired the shots, someone in the group may have yelled, "get a gun." Petitioner argues that pursuit of this possibility may have entitled petitioner to a self-defense instruction. The Court is not persuaded by this speculative argument, particularly in light of the evidence that petitioner fired the first shots,

that he was driving a truck while his targets were running away from him on foot, and that

state law required petitioner to retreat before using deadly force, which he did not do.

Nor is the Court persuaded by petitioner's equally speculative claims that, with

"proper preparation," he could have testified to facts entitling him to a sudden passion

charge. In responding to the motion for summary judgment regarding this claim, petitioner

states the following:

> Had trial counsel properly developed 'some evidence' through the direct
> examination of Petitioner, the jury could have been instructed that if they
> found Petitioner acted under the influence of sudden passion, his sentence
> would have been capped at 20 years. Even if Petitioner changed his plea, as
> suggested by trial counsel, evidence supporting 'sudden passion' should have
> been elicited through direct examination of Petitioner conducted by trial
> counsel.

(Docket Entry No. 15, p. 13.)   However, noticeably absent from this argument is a

description of what the alleged "some evidence" would have been, supported by probative

summary judgment evidence of such evidence.   Petitioner's bald assertion of "some

evidence" is conclusory and insufficient to meet his burden of proof under *Strickland*. *See*

*Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990) (holding that mere conclusory allegations

on a critical issue are insufficient to raise a constitutional issue).

Moreover, and as noted in the state trial court's findings, the intermediate state

appellate court held that petitioner was not entitled to a sudden passion charge. The appellate

court ruled as follows:

Issue three contends the trial court erred in refusing to instruct the jury on sudden passion in the punishment phase of the trial. 'At the punishment stage of a trial, the defendant may raise the issue as to whether he caused the death under the immediate influence of sudden passion arising from an adequate cause.' TEX. PEN. CODE ANN. § 19.02(d) (Vernon 2003). Sudden passion is an affirmative defense upon which the defendant bears the burden of proof by a preponderance of the evidence. '[A] sudden passion charge should be given if there is some evidence to support it, even if that evidence is weak, impeached, contradicted, or unbelievable.'

Quintero offered several reasons to explain why he was fearful of others. Quintero testified that he dated a girl who had dated Jhovany Juarez. After Quintero began dating the girl, he began to receive threatening telephone calls. Additionally, Quintero testified that he and his mother were victims of a drive-by shooting in 2003, when a person named Armanzo Cantu shot Quintero. Quintero claimed that he then started carrying a gun because 'these people' had attempted to kill him.

Quintero also testified about the circumstances in the immediate period before Juarez's death. Quintero testified that he had encountered Cantu in the neighborhood the day before the offense. According to Quintero, Cantu made an obscene gesture 'that kind of made me mad' because Cantu was trying to 'punk me.' Subsequently, Quintero followed Cantu into a trailer park. As Quintero was leaving, a person named Paulino threw bottles at him. Then Quintero saw 'this person that shot me' and shot into the air. Quintero explained that on the following day, he shot towards the people that he felt had threatened his life.

There are several reasons why Quintero was not entitled to an instruction on sudden passion. First, '[a]n instruction on sudden passion is proper only when the sudden passion was directly caused by and arose out of provocation by the deceased at the time of the offense.' Quintero had been shot at least two years before the offense. The shooting of Quintero is a former provocation that is expressly excluded from the definition of 'sudden passion.' TEX. PEN. CODE ANN. § 19.02(a)(2) (Vernon 2003) (''Sudden passion' means passion directly caused by and arising out of provocation by the individual killed or another acting with the person killed which passion arises at the time of the offense and is not solely the result of former provocation.').

Second, Quintero testified that the day before he shot Alejandro Juarez, Quintero had encountered Armanzo Cantu in the neighborhood and Cantu 'flipped [him] off.' This action is neither sudden nor is it provocation adequate to justify homicide. See TEX. PEN. CODE ANN. § 19.02(a)(1) (Vernon 2003). (''Adequate cause' means cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection.').

Third, the incidents that Quintero described as having provoked his conduct did not involve the deceased. Generally, 'evidence of provocation by the decedent is required for a sudden-passion charge.' In this case, there is no evidence in the record that Alejandro Juarez either committed the acts of violence that occurred in 2003 or that he had encountered Quintero the day before the offense. Further, there was no evidence that Alejandro Juarez and Mejia acted together at the time of the offense in provoking Quintero to fire his gun. See TEX. PEN. CODE ANN. § 19.02(a)(2). We hold that Quintero has failed to demonstrate the court erred in refusing to instruct the jury on sudden passion[.]

*Quintero*, at *3–4 (case citations omitted).

Petitioner fares no better in arguing that poor preparation prevented his obtaining a manslaughter charge. Petitioner contends that his use of the word "reckless" during his trial testimony was sufficient to merit a manslaughter charge. The state court expressly found that a manslaughter charge was not necessary or appropriate in petitioner's case. Indeed, petitioner's own testimony clearly showed that he took a firearm to the location and deliberately fired at the individuals he thought were responsible for the prior shooting. Petitioner fails to show that, had counsel requested a manslaughter charge, that the trial court would have committed reversible error in denying the request, and no actual prejudice is shown.

20

Moreover, in all of these instances, petitioner fails to establish that, but for counsel's alleged deficient performance, there is a reasonable probability that the result of the trial would have been different or that his punishment would have been significantly less than what he received.

The state court rejected petitioner's claims of ineffective assistance. Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of these claims.

## V. TRIAL COURT ERROR

Petitioner argues in his second habeas claim that the trial court denied him his right to effective assistance of counsel by granting trial counsel's request to allow petitioner to testify in the narrative. Respondent argues that this claim is unexhausted and procedurally barred from consideration by the Court because it was not raised in state court on direct appeal or on collateral review. Petitioner posits that both of the claims have been exhausted because they involve the same operative facts and law.

The Court is persuaded by respondent's argument that the claim is procedurally barred at this point. Error by a trial court and error by defense counsel are two independent claims. Petitioner fails to establish cause and actual prejudice regarding the procedural default, and the claim is barred from consideration by this Court. Regardless, petitioner fails to establish

that the state trial court denied him the effective assistance of counsel by granting his counsel's motion to allow petitioner to testify in narrative form.  Moreover. this Court has already denied petitioner's claims regarding ineffective assistance of counsel.

### VI.  CONCLUSION

Respondent's motion for summary judgment (Docket Entry No. 11) is **GRANTED** and this lawsuit is **DISMISSED WITH PREJUDICE**.  A certificate of appeal ability is **DENIED**.  Any and all pending motions are **DENIED AS MOOT**.

Signed at Houston, Texas, on this the 29 day of January, 2015.


KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE